IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| NESANET G. BELAY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 1:17-cv-00545-LY |
| | § | |
| AEGIS WHOLESALE | § | |
| CORPORATION, AURORA LOAN | § | |
| SERVICES, LLC, NATIONSTAR | § | |
| MORTGAGE LLC, MORTGAGE | § | |
| ELECTRONIC REGISTRATION | § | |
| SYSTEMS, INC., VERIPRISE | § | |
| PROCESSING SOLUTION, LLC, | § | |
| | § | |
| Defendants. | § | |

## MOTION TO DISMISS

Nationstar Mortgage LLC (**Nationstar**), Veriprise Processing Solution, LLC (**Veriprise**), Mortgage Electronic Registration Systems, Inc. (**MERS**), and Aurora Loan Services, LLC (**Aurora**) (collectively **defendants**) move to dismiss the claims Nesanet G. Belay asserts in her complaint.[1]

### I.   SUMMARY OF ARGUMENT

Belay has filed three lawsuits[2] and three bankruptcies[3] to avoid foreclosure of the real property located at 15352 English River Loop, Leander, Texas 78641.  In the instant case, her

---

[1] Doc. 1-1, Complaint (**compl.**).

[2] *See Nesanet G. Belay v. Aegis Wholesale Corp., et al.*, Case No. 14-0601-C26 in the 26th Judicial District Court of Williamson County, Texas (filed on June 27, 2014 and nonsuited with prejudice on August 15, 2014); *Nesanet Belay v. Nationstar Mortgage, LLC, et al.*, Case No. 14-1067-C277 in the 277th Judicial District Court of Williamson County, Texas (filed on November 10, 2014, removed and thereafter styled *Nesanet Belay v. Nationstar Mortgage, LLC*, 1:14-cv-01115-LY (W.D. Tex.) and later dismissed upon Belay's notice of dismissal without prejudiced filed on June 6, 2015).

[3] *See In re Nesanet G. Belay*, Case No. 13-11492-hem (Bankr. W. D. Tex. 2013) (filed August 5, 2013, Discharged January 17, 2014); *In re Nesanet G. Belay*, Case No. 14-11030-tmd (Bankr. W. D. Tex. 2014) (filed June 30, 2014; dismissed September 8, 2014); *In re Nesanet G. Belay*, Case No. 14-11771 (Bankr. W. D. Tex. 2014) (filed December 2, 2014; Dismissed March 24, 2017).

third lawsuit, which is based on a form found on the Internet,[4] she disputes the title and ownership of the property, which secures her obligations under a loan.  Rather than allege facts specific to her, to her property, to her loan, or to defendants in support of her claims, she clumsily parrots the Internet form.  The theories stated in the petition have been soundly rejected by Texas state and federal courts.  Belay's claims must be dismissed.

## II.   FACTUAL & PROCEDURAL BACKGROUND

There are few well-pleaded facts in Belay's petition.  According to her sparse allegations, which for purposes of this motion must be taken as true,[5] and public records, on January 27, 2005, Belay executed a deed of trust to MERS as beneficiary in a nominee capacity for the original lender Aegis Wholesale Corporation (**Aegis**) and its successors and assigns granting a lien against the property located at 15352 English River Loop, Leander, Texas 78641 (**property**) to secure repayment of a promissory note (the deed of trust and promissory note constitute the **loan**) in the amount of $128,000 payable to Aegis.[6]

The deed of trust was assigned to Aurora on March 1, 2011.[7]  On June 29, 2012, Aurora assigned the deed of trust to Nationstar,[8] and on May 23, 2017, Nationstar assigned the deed of trust to U.S. Bank, as trustee.[9]

Because the Internet form so provides, Belay attempts to muddy the facts by asserting:

- her loan was "securitized" in a "Common Law Trust formed pursuant to New York Law."[10]

---

[4] *See* sample complaint available at http://www.certifiedforensicloanauditors.com/pdfs/sample-complaint-package/Complaint-Petition.pdf, **Exhibit 1**.
[5] Defendants do not concede the truth of these allegations, but recite them *arguendo* for this motion.
[6] *See* **Exhibit 2**, deed of trust.  The deed of trust was recorded in the official public records of Williamson County, Texas on February 10, 2005 as document number 2005010463; *see also* compl. ¶ 15.
[7] *See* **Exhibit 3**, Corporate Assignment of Deed of Trust, which was recorded in the official public records of Williamson County, Texas on December 13, 2011 as document number 2011084203.
[8] *See* **Exhibit 4**, Corporate Assignment of Deed of Trust, which was recorded in the official public records of Williamson County, Texas on May 9, 2013 as document number 2013042182.
[9] *See* **Exhibit 5**, Corporate Assignment of Deed of Trust, which was recorded in the official public records of Williamson County, Texas on June 1, 2017 as document number 2017049285.

---

- the "trust" is subject to a pooling and servicing agreement which provides, among other things, the note and deed of trust be "indorsed and assigned, respectively, to the trust and executed by multiple intervening parties . . . before it reached the [] Trustee" by some unspecified "closing date."[11]

- the note and deed of trust were not properly assigned and/or transferred "in accordance with the PSA and/or NEW YORK law" by the "closing date."[12]

- because the note and deed of trust were not properly assigned and/or transferred, no "true sale" occurred, the deed of trust was rendered invalid, none of the defendants in this case "hold a perfected and secured claim in the Property; and [] all Defendants are estopped and precluded from asserting an unsecured claim against [her] estate."[13]

In other words, Belay contrives the involvement of a "trust" into the transaction, invents requirements imposed by a pooling and servicing agreement to perfect a transfer of the loan into the "trust" and concludes, because the loan was not transferred in accordance with the pooling and servicing agreement, the loan is now unenforceable by anyone.

Based upon these allegations, Belay asserts ten claims she identifies as "causes of action:" (**1**) lack of standing; (**2**) fraud in the concealment; (**3**) fraudulent inducement; (**4**) intentional infliction of emotional distress (**IIED**); (**5**) slander of title; (**6**) quiet title; (**7**) declaratory relief; (**8**) violation of the Truth in Lending Act (**TILA**); (**9**) violation of the Real Estate Settlement Procedures Act (**RESPA**); and (**10**) rescission.[14]

### III.    LEGAL STANDARD

The standard for deciding a motion under Rule 12(c) is the same as the one for deciding a motion to dismiss under rule 12(b)(6). *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 313 n. 8 (5th Cir. 2002) ("A number of courts have held that the

---

[10] Compl. ¶ 16.
[11] *See* compl. ¶¶ 18, 21.
[12] *See* compl. ¶¶ 20-22, 26-27, 34.
[13] Compl. ¶¶ 35-36.
[14] Compl. ¶¶ 42-138.

standard to be applied in a Rule 12(c) motion is identical to that used in a Rule 12(b)(6) motion." (citation and internal quotation marks omitted)).   Rule 12(b)(6) authorizes the dismissal of a complaint that fails "to state a claim upon which relief can be granted."   In deciding a motion to dismiss, a court accepts all well-pleaded facts as true and views them in the light most favorable to the claimant.   *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008). "Conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."   *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002).   A formulaic recitation of the elements, because of its conclusory nature, is not entitled to the usual presumption of truth.   *Ashcroft v. Iqbal*, 556 U.S. 662, 698 (2009).   A plaintiff must instead plead facts, and those facts "must be enough to raise a right to relief above the speculative level."   *Bell Atl. v. Twombly*, 550 U.S. 544, 555-56 (2007).   The facts actually pleaded must, on their face, give rise to a plausible claim for relief.   *Iqbal*, 556 U.S. at 678-79.   A complaint must offer more than an "unadorned, the-defendant unlawfully-harmed-me accusation."   *Id.*

In deciding a motion to dismiss, a court may consider not only the allegations made in the plaintiff's complaint, but also any documents incorporated in the pleading and all matters of which judicial notice may be taken.   *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017-18 (5th Cir. 1996).   All documents referred to in the plaintiff's petition, and which are central to the plaintiff's action, are considered "incorporated in the pleading."   *See Scanlan v. Tex. A & M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-90 (5th Cir. 2000) ("[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [his or] her claim.").   In addition, "a court may permissibly refer to matters of public record."

*Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994).

## IV.   ARGUMENT & AUTHORITIES

### A.  The Premises of Belay's Internet Complaint Fail in Texas.

The premises underlying Belay's complaint is the loan was sold to a "trust," but the transfer was not made in the time and manner required by an unidentified pooling and servicing agreement.[15]  According to Belay, this renders the loan invalid and unenforceable by anyone.[16]  These allegations cannot form the bases of any of Belay's claims because, to the extent Belay has pleaded nothing but conclusions in support of these contentions, she lacks standing to enforce any pooling and servicing agreement to which she is not a party.  As is evident from the publicly available records, MERS, Aurora, and Nationstar had a right to foreclosure during their respective times they were mortgagees of the deed of trust.

### 1.  Belay's Allegations Regarding Applicability of Trust/Pooling and Servicing Agreement are Impermissibly Vague.

Belay fails to allege a single fact supporting the speculation, her "loan was securitized, with the Note not being properly transferred to Defendant,"[17] which was cut-and-pasted from the Internet form.  Without any knowledge of whether the note and deed of trust *were* securitized or what the pooling and servicing agreement actually provided, Belay's allegations the alleged transfer of the note and deed of trust into the "trust" is wholly conclusory and cannot support any cause of action.  *See Iqbal*, 129 S.Ct. at 1949-51 (factual allegations must be plausible; they cannot be merely conceivable, possible or conclusory).

---

[15] *See* compl. ¶ 20-22, 32-35.
[16] *See* compl. ¶ 36.
[17] *See* compl. ¶ 16.

**2.  Belay Lacks Standing to Enforce a Pooling and Servicing Agreement**.

Even if Belay alleged actual facts showing the loan was transferred into a trust, was subject to particular requirements of a pooling and servicing agreement, but failed to comply with those requirements, Texas state and federal courts have consistently held a mortgagor does not have standing to challenge alleged violations of a pooling and servicing agreement.   In *Reinagel v. Deutsche Bank Nat'l Trust Co.*, the Fifth Circuit addressed a similar allegations—a purported transfer of a loan into a trust was "void because [it] violated the PSA that governed [the trust]." 2013 WL 5832812, *5 (5th Cir. Oct. 29, 2013).  The Fifth Circuit not only found the plaintiffs could not enforce the terms of the pooling and servicing agreement because they were not parties to it, it found "the fact that the assignments violated the PSA—a separate contract— would not render the assignments void." *Id.* (emphasis added); *see also Nobles v. Marcus*, 533 S.W.2d 923, 926-27 (Tex. 1976) (to challenge validity of conveyance, complaining party must establish it is void, not merely voidable).

Decisions from Texas federal district courts make clear the "New York law" Belay relies on does not render allegedly non-compliant transfers into a trust void.  *See Felder v. Countrywide Home Loans*, No. H-13-0282, 2013 WL 6805843, at *18 (S.D. Tex. Dec. 20, 2013); *Sigaran v. U.S. Bank Nat. Ass'n*, No. H-12-3588, 2013 WL 2368336, at *3 (S.D. Tex. May 29, 2013); *Green v. Bank of Am. N.A.*, No. H-13-1092, 2013 WL 3937070, at *3 (S.D. Tex. July 30, 2013); *Calderon v. Bank of Am. N.A.*, 941 F. Supp. 2d 753, 766 (W.D. Tex. 2013).

A common principle underlies each of these decisions—New York law does not void actions allegedly taken *ultra vires* to a pooling and servicing agreement.  *See Felder*, 2013 WL 6805843, at *19 ("[c]ourts applying New York law have treated actions by trustees as voidable.") (citing *Green*, 2013 WL 3937070, at *3 citing *Mooney v. Madden*, 597 N.Y.S.2d 775, 776 (N.Y.

App. Div. 1993)); *Sigaran*, 2013 WL 2368336, at *3 ("Despite New York law's use of the term 'void,' courts applying New York law have treated ultra vires actions by trustees as voidable and capable of ratification.").  As demonstrated by a number of New York court decisions, a trustee's allegedly *ultra vires* act may be ratified despite the language contained in the New York trust statutes.[18]  *Calderon*, 941 F. Supp. 2d at 766 (collecting cases); *see also Bank of America, N.A. v. Bassman FBT, LLC*, 981 N.E.2d 1, 9 (Ill. App. Ct. 2012) (same).  If an act may be ratified, it is voidable, not void.  *Calderon*, 941 F.Supp.2d at 766-67 (citing to *Hackett v. Hackett*, 950 N.Y.S.2d 608, (N.Y. Sup. Ct. Feb. 21, 2012)).  Because Belay's complaints, if well-pleaded and taken as true, could at most render the transfers *voidable*, Belay does not have the authority to challenge them under Texas law.  *See Nobles*, 533 S.W.2d at 926-27; *Reinagel*, 735 F.3d at 228.

Belay's claims for fraudulent inducement, IIED, slander of title, quiet title, and request for declaratory relief all stem from her false assertion she has the right to complain about an alleged failure to comply with the pooling and servicing agreement.[19]  Belay, as a non-party to the pooling and servicing agreement, lacks the authority to challenge whether her loan was transferred into the trust in compliance with the pooling and servicing agreement and each of her claims based on this allegation fail as a matter of law.

### 3.  Chapter 51 of the Texas Property Code Authorizes a Mortgagee to Conduct a Foreclosure.

Belay's claims cannot survive the facts evidenced by publicly-available documents.  The documents in the public record establish an unbroken, straightforward assignment of the deed of trust from the original beneficiary, MERS as nominee for Aegis Wholesale Corporation and its

---

[18] If there is a conflict, it is a matter for a New York court to reconcile. *Calderon*, 941 F. Supp. 2d at 767.  "That this line of cases exists… is enough for [this Court] to conclude that such acts are merely voidable." *Id.* (internal quotations omitted).

[19] *See* compl. ¶¶ 71-72 (fraudulent inducement), ¶¶ 81-82 (IIED), ¶¶ 90-91 (slander of title), ¶¶ 98-102 (quiet title), ¶¶ 110-119 (declaratory relief).

successors and assigns, to Aurora, then to Nationstar, and then to U.S. Bank.[20]   MERS, Aurora, and Nationstar had a right to foreclosure during their respective times they were mortgagees of the deed of trust.

Chapter 51 of the Texas Property Code governs the enforcement of a deed of trust, which creates a lien against real property.   *See Lighthouse Church of Cloverleaf v. Tex. Bank*, 889 S.W.2d 595, 603 (Tex. App.—Houston [14th Dist.] 1994, writ denied); *see also* Tex. Prop. Code § 51.002.   Chapter 51 authorizes a "mortgagee"[21] to conduct a foreclosure sale, either directly or through a "mortgage servicer."   *See* Tex. Prop. Code § 51.0025.   MERS, Aurora, and Nationstar were all once mortgagees, and at the time they were mortgagees of the deed of trust, they had the power to take any action a mortgagee can take without regard to who owns or holds the note.

Nothing in the plain language of chapter 51 imposes any requirement a person or entity who otherwise qualifies as a mortgagee also hold the note.   In fact, when chapter 51 was amended in 2003 to adopt the current statutory scheme, it specifically eliminated the previous requirement the "holder" conduct the foreclosure and, in its place, introduced the "mortgagee/mortgage servicer" standard.   *See* Historical and Statutory Notes to section 51.002 ("Acts 2003, 78th Leg., ch. 554 in subsecs. (b)(3) and (d) substituted 'mortgage servicer' for 'holder' throughout . . . .").   This is not an insignificant amendment; rules of statutory construction require this Court to conclude the Texas legislature intended to omit any requirement the person who seeks to enforce a security instrument must also hold the note.   *See Acker v. Tex. Water Comm'n*, 790 S.W.2d 299, 301 (Tex. 1990) ("A statute is presumed to have been enacted by the legislature with complete knowledge of the existing law and with reference

---

[20] *See* Corporate Assignment of Deed of Trust, **Exhibit 3**; *see* Corporate Assignment of Deed of Trust, **Exhibit 4**; *see* Corporate Assignment of Deed of Trust, **Exhibit 5**.
[21] A "mortgagee" is defined a number of ways, two of which are the beneficiary and grantee of the security interest. *See* Tex. Prop. Code § 51.0001(4)(A).

to it."). Courts are required to presume the legislature's omission of the previous requirement was intentional. *See e.g., Cameron v. Terrell & Grant, Inc.*, 618 S.W.2d 535, 540 (Tex. 1981) ("It is a rule of statutory construction that every word of a statute must be presumed to have been used for a purpose . . . [l]ikewise, every word excluded from a statute must also be presumed to have been excluded for a purpose."); *see also Centurion Planning Corp. v. Seabrook Venture II*, 176 S.W.3d 498, 505 (Tex. App.—Houston [1st Dist.] 2004, no pet.).

The facts show defendants, MERS, Aurora, and Nationstar, all had the authority to foreclose at one time: (**1**) MERS was named as the beneficiary in the Deed of Trust and as nominee of the original lender and its successors and assigns;[22] (**2**) as beneficiary, MERS's powers included, among other things, "the right to foreclose and sell the Property;"[23] and (**3**) MERS, as nominee for the original lender and its successors and assigns, executed an assignment of the deed of trust to Aurora, who later executed an assignment to Nationstar.[24]

The rights granted to MERS in the deed of trust give MERS the power to foreclose and sell the property. *See Richardson v. CitiMortgage, Inc.*, No. 6:10-cv-119, 2010 WL 4818556, *5 (E.D. Tex. Nov. 22, 2010); *Santarose v. Aurora Bank FSB*, No. H-10-720, 2010 WL 2232819, *5 (S.D. Tex. June 2, 2010) (concluding that, "[b]y the plain language of the Deed of Trust, MERS had the right to foreclose the property."); *Wigginton*, 2011 WL 2669071 at *3 (same). MERS had the power to transfer those rights and interests in the deed of trust to Aurora. *See Richardson*, 2010 WL 4818556 at *5 ("Under Texas law, where a deed of trust, as here, expressly provides for MERS to have the power of sale, then MERS has the power of sale . . . MERS was the nominee for Southside Bank and its successors and assigns. MERS had the authority to transfer the rights and interests in the Deed of Trust to CitiMortgage.").

---

[22] *See* ex. 2.
[23] *Id.*
[24] *See* exs. 3-4.

Because MERS had the power to foreclose and the power to assign these rights to Aurora, its assignment to Aurora was sufficient to give Aurora the authority to foreclose. *See* Tex. Prop. Code, ch. 51. Likewise, Aurora had the power to assign its right to foreclose, and its assignment to Nationstar gave Nationstar the authority to foreclose. *Id.*

### i.   A Mortgagee is Not Required to Own or Hold the Note to Foreclose the Deed of Trust.

Belay's claims for fraudulent inducement, IIED, slander of title, quiet title, and request for declaratory relief fail to the extent they rely on her assertion only the holder of the note can foreclose the deed of trust.[25] The enforcement of a note and the enforcement of a deed of trust are two separate and distinct rights governed by two separate and distinct statutory schemes. *See, e.g., Bierwirth v. BAC Home Loans Servicing, LP*, No. 03-11-644-CV, 2012 WL 3793190, at *3 (Tex. App.—Austin Aug. 30, 2012) ("this Court rejected the argument that a note and its security are inseparable by recognizing that the note and the deed-of-trust lien afford distinct remedies on separate obligations—the note against the borrower and the lien against the real property. For this reason, a lien creditor may pursue foreclosure of a lien against real property under the deed of trust independent of any personal action against the borrower for collection on the note."); *Aguero v. Ramirez*, 70 S.W.3d 372, 374 (Tex. App.—Corpus Christi 2002, pet. denied) (explaining separate and distinct rights to pursue collection of a note and enforcement of its security instrument). It is well settled the right to recover a personal judgment for a debt secured by a lien on land and the right to have a foreclosure of lien are severable. *Martins v. BAC Home Loans Servicing, L.P.*, 722 F.3d 249, 255 (5th Cir. 2013) ("Where a debt is 'secured by a note, which is, in turn, secured by a lien, the lien and the note constitute separate obligations.'").

---

[25] *See e.g.*, compl. ¶ 44, 54, 57, ¶¶ 71-72 (fraudulent inducement), ¶¶ 81-82 (IIED), ¶¶ 90-91 (slander of title), ¶¶ 98-102 (quiet title), ¶¶ 110-119 (declaratory relief).

Texas courts have soundly rejected the argument a note and its security are inseparable by recognizing the note and security afford distinct remedies on separate obligations. *See id.*; *Lowery v. Bank of Am., N.A.*, No. 04-12-729-CV, 2013 WL 5762227, at *2 (Tex. App.—San Antonio Oct. 23, 2013, no pet.) ("We first observe that any evidence or argument that BAC did not validly hold the promissory note is not evidence that BAC lacked the authority to foreclose on the deed of trust. ... [A] deed of trust may be enforced by the mortgagee, regardless of whether the mortgagee also holds the note."); *Farkas v. Aurora Loan Services, LLC*, No. 05-12-01095-CV, 2013 WL 6198344, *4 (Tex. App.—Dallas Nov. 26, 2013) ("When a debt is memorialized by a note and a lien, the note and the lien constitute two separate bundles of rights and obligations.  A non-judicial foreclosure enforces the deed of trust, not the underlying promissory note."); *Kan v. OneWest Bank, FSB*, 823 F. Supp. 2d 464, 469 (W.D. Tex. 2011) ("it bears repeating that foreclosure enforces the deed of trust, not the underlying note"); *Kramer v. Fannie Mae*, No. A-12-CA-276-SS, 2012 WL 3027990, at *7 (W.D. Tex. May 15, 2012) ("authority to conduct a foreclosure under Texas law is governed by an entity's relationship to the deed of trust, rather than the associated note").

## B.  Belay Fails to Allege Sufficient Fraud Claims.

Belay's Internet form has sections entitled "Fraud in the Concealment"[26] and "Fraud in the Inducement."[27]   According to Belay, her fraud in the concealment claim is based upon defendants' alleged concealment of "the fact that the Loans were securitized as well as the terms of the Securitization Agreements."[28]   Belay alleges she relied upon defendants' representations, or lack thereof, and entered into the loan when, had she known the loan would be securitized, she

---

[26] *See* compl. ¶¶ 61-69.
[27] *See* compl. ¶¶ 70-77.
[28] *See* compl. ¶ 62.

would not have.[29]   There are woefully insufficient allegations to suggest the loan was ever securitized.

Belay's fraudulent inducement claim is likewise based on conclusory assertions "Defendants, intentionally misrepresented to Borrower those Defendants were entitled to exercise the power of sale provision contained in the Deed of Trust[,]"[30] and "Defendants misrepresented that they are the holder and owner of the Note and the beneficiary of the Deed of Trust."[31]

### 1.   Belay's Fraud Claims Do Not Meet Rule 9(b)'s Heightened Pleading Requirement.

Rule 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud or mistake."   A plaintiff must plead the "time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby." *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997) (quoting *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994)); *see also Jag Media Holdings Inc. v. A.G. Edwards & Sons Inc.*, 387 F. Supp. 2d 691, 709 (S.D. Tex. 2004). Rule 9(b) "requires a plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Williams*, 112 F.3d at 177–78. "Although Rule 9(b) expressly allows scienter to be averred generally, simple allegations that defendants possess fraudulent intent will not satisfy Rule 9(b)." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008) (internal quotation marks omitted).   Rather, "[t]he plaintiffs must set forth *specific facts* supporting an inference of fraud." *Id.* (internal quotation marks omitted, emphasis in the original).

---

[29] *See* compl. ¶¶ 62-66.
[30] Compl. ¶ 71.
[31] Compl. ¶ 72.

To establish fraud against a corporation, "the required state of mind must actually exist in the individual making (or being a cause of the making of) the misrepresentation, and may not simply be imputed to that individual on general principles of agency." *Dynegy, Inc. v. Yates*, 345 S.W.3d 516, 530 (Tex. App.—San Antonio 2011) (citing *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 366 (5th Cir. 2004)), *rev'd on other grounds*, 422 S.W.3d 638 (Tex. 2013).   Subjective intent or knowledge of several corporate actors cannot be combined, "mixing and matching" to satisfy the scienter requirement of fraud.  *Id.*  "[T]he same corporate agent must commit all the elements of fraud before the corporation may be held liable for the fraud."  *Id.* at 351.  "Fraud is never presumed, and it is plaintiff's burden to allege and prove actionable fraud."  *William B. Roberts, Inc. v. McDrilling Co.*, 579 S.W.2d 335, 339 (Tex. Civ. App.—Corpus Christi 1979, no writ).

To state a claim for fraud by non-disclosure, Belay must allege facts suggesting any of the defendants had a duty to disclose the loan would be securitized.  *See Bradford v. Vento*, 48 S.W.3d 749, 755 (Tex. 2001).  She fails to do so here.[32]  Likewise, Belay fails to allege facts to support her fraudulent inducement claims; she does not plead when any specific defendant made an alleged misrepresentations, how the misrepresentation was made, or who on behalf of each defendant made the alleged misrepresentations.[33]

## 2. Belay's Fraud Claims are Barred by the State of Limitations.

The only act of reliance identified by Belay—her entering into the loan[34]—establishes any claim for fraud was long ago time-barred.  *See* TEX. CIV. PRAC. & REM. CODE § 16.004(a)(4) (fraud has a four year limitations period).  "A statute of limitations may support dismissal under Rule 12(b)(6) where it is evidence from the plaintiff's pleadings that the action is

---

[32] *See* compl. ¶¶ 61-69.
[33] *See* compl. ¶¶ 70-77.
[34] *See* compl. ¶¶ 63, 73.

barred and the pleadings fail to raise some basis for tolling or the like." *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2002). Belay obtained the loan, on January 27, 2005, over twelve years ago. As of January 27, 2009, Belay's fraudulent inducement claim was barred by the four year statute of limitations.

### 3. Defendants Were Not Involved With the Loan Origination.

The only act of reliance identified by Belay is her entering into the loan,[35] but defendants were not involved with the loan origination. Belay admits Aegis originated the loan.[36] Therefore, Belay's fraud in the concealment and fraudulent inducement claims must relate to Aegis and not any of the other defendants.[37] None of the defendants can be held liable under Belay's fraud claims because they were not involved with the origination of the loan.[38]

## C. Belay Fails to Allege a Sufficient Claim for IIED.

### 1. Belay's IIED Claim is Based Entirely on Vague and Conclusory Assertions and is not Plausible.

Belay's Internet form includes a heading for "Intentional Infliction of Emotional Distress."[39] An IIED claim is considered a "gap-filler" tort. *Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 816 (Tex. 2005); *Hoffmann-La Roche, Inc. v. Zeltwanger*, 144 S.W.3d 438, 447

---

[35] *See* compl. ¶¶ 63, 73.

[36] *See* compl. p. 2 ("Aegis Wholesale Corporation is the Originator of the loan."), ¶ 15 ("On or about January 27, 2005… Borrower entered into a consumer credit transaction with Aegis by obtaining a $128,000 mortgage loan… This note was secured by a First Trust Deed on the Property in favor of Aegis.").

[37] Belay also alleges "The material misrepresentations were made by Defendants with the intent to cause Borrower to reasonably rely on the misrepresentation in order to induce the Plaintiff to rely on the misrepresentations and foreclosure on the Property. This material misrepresentation was made with the purpose of initiating the securitization process…" Compl. ¶ 74. These allegations cannot support Belay's fraudulent inducement claim because they do not relate to Belay being induced to enter into a contract. *See Haase v. Glazner*, 62 S.W.3d 795, 798 (Tex. 2001) (the reliance element for simple fraud is heightened in fraudulent-inducement cases; the plaintiff must prove it entered into a binding agreement based on the defendant's false representations).

[38] *See generally* compl.; *see also* compl. p. 2 (alleging Aurora is the "purported Master Servicer for Securitized Trust and/or participant in the imperfect securitization of the Note and/or the Deed of Trust[;]" Nationstar is the "purported participant in the imperfect securitization of the Note and/or the Deed of Trust[;]" Veriprise Processing Solution LLC is the "purported Sponsor for Securitized Trust and/or a purported participant in the imperfect securitization of the Note and/or the Deed of Trust[;]" and MERS is the "purported Beneficiary under the Deed of Trust and/or is a purported participant in the imperfect securitization of the Note and/or the Deed of Trust[.]"

[39] *See* compl. ¶¶ 78-88.

---

(Tex. 2004); *Standard Fruit & Veg. Co. v. Johnson*, 985 S.W.2d 62, 68 (Tex. 1998).  An IIED claim is available only when a person intentionally inflicts severe emotional distress in a manner so unusual the victim has no other recognized theory of redress.  *Hoffmann-La Roche*, 144 S.W.3d at 447.

To state a claim for IIED, Belay must allege facts showing the following: (**1**) the defendant acted intentionally or recklessly; (**2**) the conduct was extreme and outrageous; (**3**) the actions of the defendant caused her emotional distress; and (**4**) the resulting emotional distress was severe.  *Standard Fruit*, 985 S.W.2d at 65 (citing *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex. 1993)).  Belay's claim bases on her assertion defendants misrepresented they were entitled to foreclose and fraudulently attempted to foreclose.[40]  These circumstances, taken as true, fall short of alleging at least two elements of an IIED claim: (**1**) "extreme and outrageous" conduct, that was (**2**) "intentional or reckless."

### i.   Extreme and Outrageous Conduct.

Whether conduct is extreme and outrageous is a question of law. *Bradford v. Vento*, 48 S.W.3d 749, 758 (Tex. 2001); *Creditwatch*, 157 S.W.3d at 817.  "Extreme and outrageous" conduct requires a showing of conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in civilized community." *Tiller v. McLure*, 121 S.W.3d 709, 713 (Tex. 2003).  A defendant's conduct is not extreme and outrageous just because it is tortious or otherwise wrongful.  *Bradford*, 48 S.W.3d at 758.  *Compare Isaacs v. Bishop*, 249 S.W.3d 100, 112 (Tex. App.—Texarkana 2008) (concluding plaintiff was successful on IIED claim where evidence demonstrated defendant sought to bankrupt plaintiff, threatened to make plaintiff's life as "miserable as possible," attempted to foreclose on a fraudulently created promissory note, and

---

[40] *See* compl. ¶¶ 81-82.

brought plaintiff into a number of legal proceedings); *Wieler v. United Sav. Assoc. of Tex.*, 887 S.W.2d 155, 159 (Tex. App.—Texarkana 1994) (finding the evidence did not support a claim for IIED even though mortgage servicer had charged to plaintiff's escrow account attorneys' fees owed in violation of the bankruptcy court's order).

Belay's complaint contains no allegations of non-conclusory facts showing "extreme and outrageous" conduct on the part of any defendant.  Instead, Belay merely concludes: "Defendants conduct – fraudulently attempting to foreclose or claiming the right to foreclose on a property in which they have no right, title or interest – is so outrageous and extreme that it exceeds all bounds which is usually tolerated in a civilized community."[41]

### ii.    Intentional and Reckless Conduct.

Belay must not only allege defendants engaged in extreme and outrageous conduct, but also defendants either intended to cause Belay to suffer emotional distress, or the primary risk created by defendants' alleged reckless conduct is the emotional distress she now claims to suffer.  *Standard Fruit*, 985 S.W.2d at 67-68.  Belay's complaint contains no allegations of fact supporting her conclusory statements defendants intended to cause emotional distress, or the primary risk created by their conduct was emotional distress.[42]

### 2.  Belay's IIED Claim is Cumulative of the Other Claims She Asserts.

Belay's IIED claim must also be dismissed because it is cumulative of the other claims she asserts or she could have asserted against defendants for which mental anguish damages, if any, are recoverable.  IIED is a "gap-filler" tort.  *Hoffmann-La Roche*, 144 S.W.3d at 447. Where a party has a recognized theory of redress, which permits the recovery of mental anguish

---

[41] Compl. ¶ 82.

[42] *See* compl. ¶¶ 83-84 ("Such conduct was undertaken with the specific intent of inflicting emotional distress on the Plaintiff…each of them, committed the acts… with complete[] utter and reckless disregard of the probability of causing Homeowners to suffer severe emotional distress.").

damages, then she cannot maintain an IIED claim.  *Id.*  This is true regardless of whether Belay

actually brings the alternative claim, whether she succeeds on the alternative claim, or whether

the alternative claim is otherwise barred.  *Id.* at 447-48; *Creditwatch*, 157 S.W.3d at 816.

Belay relies on the same allegations in her complaint to support her IIED claim as she

does to support her claims for fraudulent inducement and slander of title[43] and which, if

successful, permits the recovery of mental anguish damages.   Because Belay's fraudulent

inducement and slander of title claims afford Belay the remedy of mental anguish damages, there

is no "gap" left to fill and IIED is not available.   This is true even if the court ultimately

dismisses Belay's other claims.  *Hoffman-Roche*, 144 S.W.3d at 448; *Creditwatch*, 157 S.W.3d at

816.

### D. Belay's Fraudulent Inducement and IIED Claims are Barred by the Economic Loss Rule.

The economic loss rule generally bars tort claims when the only damages are economic

damages from a party's failure to perform under a contract.  *Chapman Custom Homes, Inc. v.*

*Dallas Plumbing Co.*, 444 S.W.3d 716, 718 (Tex. 2014).  "Under the economic loss rule, a duty

in tort does not lie when the only injury claimed is one for economic damages recoverable under

a breach of contract claim."  *Dewayne Rogers Logging, Inc. v. Propac Indus., LTD*, 299 S.W.3d

374, 382-83 (Tex. App.—Tyler 2009, pet. denied) (citing *Sterling Chems., Inc. v. Texaco, Inc.*,

259 S.W.3d 793, 796 (Tex. App.—Houston [1st Dist.] 2007, pet. denied)); *see also Bowman v.*

*CitiMortgage Inc.*, No. 3:14-cv-4036, 2015 WL 4867746, at *6 (N.D. Tex. Aug. 12, 2015)

(noting "plaintiffs do not allege that they suffered an injury independent of the subject matter of

the contract, thus warranting the application of the economic loss rule.").  Plaintiff must plead

---

[43] *See* compl. ¶¶ 71-72 (alleging defendants misrepresented they were entitled to exercise the power of sale and are "fraudulently foreclosing on the Property which they have no monetary or pecuniary interest."), ¶ 74 ("The material misrepresentations were made by Defendants with the intent to cause Borrower to reasonably rely on the misrepresentations in order to induce the Plaintiff to rely on the misrepresentations and foreclosure on the Property).

and prove something more than mere economic harm to be entitled to damages under a tort theory. *Iacobucci v. Wells Fargo Bank, N.A.*, No. 3:13-cv-1425, 2013 WL 6061343, at *10 (N.D. Tex. Nov. 15, 2013)*, aff'd sub nom. Iacobbi v. Wells Fargo Bank, N.A.*, 567 Fed. App'x. 257 (5th Cir. 2014) (dismissing plaintiffs' fraud claim because it fails Rule 9(b) and noting "plaintiffs' allegations arise from a contractual dispute; indeed all claims flow from their mortgage and Defendants' attempt to foreclose thereon . . . a tort cause of action is likely otherwise unavailable.").

The basis of Belay's fraudulent inducement and IIED claims arises out of her contractual relationship related to the note and deed of trust.[44]  Her claims are based on defendants' alleged misrepresentations they were entitled to foreclose and attempted to foreclose, but were not entitled to seek foreclosure either because her loan was not properly transferred into the trust or because defendants do not hold the note.[45]  She has not pled she suffered an injury independent of the subject matter of the note and deed of trust.[46]  Nor has she pled any damages separate from the economic loss under the note and deed of trust.[47]

## E.  Belay Fails to Allege a Sufficient Claim for Slander of Title.

To state a slander of title claim, Belay must allege facts showing the following: (**1**) Belay possessed an estate or interest in property; (**2**) defendants uttered or published a disparaging statement about Belay's title to the property; (**3**) the statement was false; (**4**) the statement was published with legal malice; and (**5**) the statement caused the loss of a specific sale. *A. H. Belo Corp. v. Sanders*, 632 S.W.2d 145, 145-46 (Tex. 1982); *Preston Gate, LP v. Bukaty*, 248 S.W.3d 892, 896 (Tex. App.—Dallas 2008, no pet.).  Belay contends defendants slandered her title to the

---

[44] *See generally* compl.
[45] *See generally* compl.
[46] *See generally* compl.
[47] *See generally* compl.

property by "preparing, posting, publishing, and recording [] the documents … including, but not limited to, the Notice of Default, Notice of Trustee's Sale, and Trustee's Deed.[48]

Belay claims the Notice of Default, Notice of Trustee's Sale, and Trustee's Deed disparaged her legal title to the property; however, she fails to provide the notices or describe what statements in the notices disparaged her title.[49]   Defendants have no way of knowing whether they did in fact publish the notices, which defendant published which notices, or whether the notices concerned Belay's title to the property.   Even assuming the notices contained false statements regarding Belay's title to the property, she fails to plead it resulted in a lost sale.[50]   The general long-standing rule in Texas is a plaintiff must allege the loss of a specific sale in order to recover in a slander of title suit.   *See Sanders*, 632 S.W.2d at 145-46.

## F.  Belay Fails to Allege a Sufficient Claim for Quiet Title.

To plead a quiet title claim, Belay is required to base her claim solely on the strength of her own title and not on the asserted weaknesses of defendants' title.   *See, e.g., Fricks v. Hancock*, 45 S.W.3d 322, 327 (Tex. App.—Corpus Christi 2001, no pet.); *see also Katz v. Rodriguez*, 563 S.W.2d 627, 629 (Tex. Civ. App.—Corpus Christi 1977, writ ref'd n.r.e.) ("[A quiet title] claimant must base his action on the strength of his own title[.]").   "The defendant is not required to show title in [it]self, nor may the plaintiff rely on the defendant's failure to do so." *Wall v. Carrell*, 894 S.W.2d 788, 797 (Tex. App.—Tyler 1994, writ denied).   Moreover, "[t]he plaintiff in a suit to quiet title must allege right, title, or ownership in himself or herself with sufficient certainty to enable the court to see he or she has a right of ownership that will warrant judicial interference." *Wright v. Matthews*, 26 S.W.3d 575, 578 (Tex. App.—Beaumont 2000, pet. denied).

---

[48] Compl. ¶ 90.
[49] *See generally* compl.
[50] *See* compl. ¶¶ 89-96.

Despite lacking standing to contest the assignments and lacking a reasonable basis in Texas law to make her claims, Belay merely recites the allegations in the Internet form. Belay alleges no facts showing the strength of her own title. In fact, she affirmatively alleges she "entered into a consumer credit transaction with Aegis by obtaining a $128,000 mortgage loan[,]" which was "secured by a First Trust Deed on the Property in favor of Aegis."[51] Belay relies on conclusory allegations defendants assert they are the owner of the note and deed of trust, but do not have any right, estate, title, lien or interest in the property.[52] These type of allegations do not show Belay's reliance upon the strength of her own title.

Belay admits she voluntarily entered into the loan transaction and makes no complaint about the validity of the deed of trust itself.[53] This deficiency is fatal to her quiet title claim. *See e.g.*, *Morlock, LLC v. JP Morgan Chase Bank, N.A.*, No. 12-20623, 2013 WL 2422778, *2 (5th. Cir. Jun. 4, 2013) ("Morlock neither contests the Deed of Trust's validity nor suggests that its own interest—derived from the HOA lien—is superior to the Deed of Trust, which secures the purchase-money mortgage. Instead, it challenges the validity of the assignment of the Deed of Trust from MERS to Chase. This argument, however, merely questions whether Chase or MERS has authority to enforce the Deed of Trust. Because Morlock does not challenge the Deed of Trust's validity or otherwise assert title superior to that of Chase or MERS, Morlock fails to advance a plausible quiet-title claim."); *Turner v. AmericaHomeKey Inc.*, No. 12-10277, 2013 WL 657772, at *3 (5th Cir. Feb. 22, 2013) (affirming district court's dismissal of plaintiff's quiet title claim because "complaint focused entirely on the alleged weaknesses of the defendants' interest in the property" "in an apparent attempt to shift to the defendants the burden of demonstrating that foreclosure would be lawful."); *see also Bell v. Bank of Am. Home Loan*

---

[51] Compl. ¶¶ 15, 97.
[52] *See* compl. ¶¶ 98-102.
[53] *See generally* compl.

*Servicing LP*, No. 4:11–cv–02085, 2012 WL 568755, at *7 (S.D. Tex. Feb. 21, 2012) (dismissing quiet title claim where plaintiff alleged "no facts to support a superior title claim"); *Ray v. CitiMortgage, Inc.*, No. A-11-CA-441-SS, 2011 WL 3269326, at *4-5 (W.D. Tex. July 25, 2011) (dismissing quiet title claim where complaint contained no allegations regarding the strength of the plaintiff's title to the property).

## G. Belay is Not Entitled to Declaratory Relief.

Belay seeks declarations on a number of issues, including a determination: (**1**) of "the rights, obligations, and interest of the parties with regard to the Property"; (**2**) of "the validity of the Trust Deeds as of the date the Notes [sic] were assigned"; (**3**) of "the validity of the NOD (Notice of Default)"; (**4**) "whether any Defendant has authority to foreclose on the Property"; (**5**) "all adverse claims to the real property"; (**6**) "plaintiff is entitled to the exclusive possession of the property[,]" and "plaintiff owns in fee simple, and is entitled to the quiet and peaceful possession of, the … property[;]" and (**7**) defendants "have no estate, right title, lien, or interest in or to the real property or any part of the property."[54] Her request for declaratory judgment should be dismissed because it redundant of claims already pending before this Court. *See Wigginton v. Bank of New York Mellon*, No. 3:10-CV-2128-G, 2011 WL 2669071, at *5 (N.D. Tex. July 7, 2011) (citing *Landscape Design and Constr., Inc. v. Transport Leasing/Contract, Inc.*, 2002 WL 257573, *10 (N.D. Tex. Feb. 19, 2002)) (dismissing declaratory judgment action that sought resolution of claims that were already basis of lawsuit).

All of Belay's declarations are redundant of her claims already asserted, including fraudulent inducement, IIED, slander of title, and quiet title. The Declaratory Judgment Act gives federal courts competence to declare rights, but does not impose a duty to do so. *Wigginton*, 2011 WL 2669071 at *5. The core issues of Belay's claims, whether the transfer of

---

[54] Compl. ¶¶ 112-119.

her loan into the trust was improper and therefore defendants have no interest in the property or standing to foreclose, will be resolved by Belay's other claims.   Belay's separate claim for declaratory relief is redundant and should be dismissed.

**H. Belay's TILA Claim is Insufficiently Plead ant Time Barred.**

Belay's attempt to hold defendants liable for unspecified violations of TILA must be dismissed for two reasons.   First, by failing to articulate non-conclusory facts to support the claim, Belay fails to plead a plausible TILA claim.   *See Iqbal*, 129 S. Ct. at 1949.   Second, the claim is barred by TILA's statute of limitations.   15 U.S.C. § 1640(e).

1. **Belay's TILA Claim is Based Entirely on Vague and Conclusory Assertions and is not Plausible.**

Belay's Internet form wholly fails to state sufficient facts suggesting she has a plausible claim against defendants for a violation of TILA.   The federal plausibility standard requires Belay to do more than assert the conclusory allegations she offers in her Internet form referencing *the entire statute*.[55]   *See Iqbal*, 129 S. Ct. at 1949 50 (the complaint must offer more than an "unadorned, the-defendant-unlawfully-harmed-me accusation," and must "permit the court to infer more than the mere possibility of misconduct[.]").   Belay cites no specific TILA provisions, nor does she specify which disclosures defendants failed to make.   Defendants are left to guess as to which TILA violation Belay is raising.   Without more specific allegations, defendants cannot determine what claims they are supposed to be defending.

Belay also admits Aegis originated the loan,[56] and makes no allegation defendants originated the loan or were involved in the loan origination.[57]   Based on Belay's own allegations,

---

[55] *See* compl. ¶ 22 ("15 U.S.C. § 1601, et.seq.").
[56] *See* compl. ¶ 15.
[57] *See generally* compl.; *see also* compl. p. 2

defendants cannot be liable for any alleged TILA violations because though they were not involved in the loan origination.[58]

### 2. Belay's TILA Claim is Barred by the Statute of Limitations.

No matter how well-pleaded Belay's TILA claim, she cannot escape the statute of limitations. "A statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like." *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2002). A claim for damages under TILA must be brought "within one year from the date of the occurrence of the violation."[59] 15 U.S.C. § 1640(e). Belay claims defendants violated unidentified provisions of TILA by failing to provide unidentified disclosures.[60] Under TILA, disclosures are required to be made by the lender at the time the loan transaction is completed between the borrower and lender. 15 U.S.C. § 1639(b); *Moor v. Travelers Ins. Co.*, 784 F.2d 632, 633 (5th Cir. 1986). "Nondisclosure is not a continuing violation for purposes of the statute of limitations." *Moor*, 784 F.2d at 633. Belay alleges she completed the loan transaction at issue on January 27, 2005.[61] Her claim for violation of TILA, was barred by limitations as of January 27, 2006, over eleven years ago.

Belay's attempts to plead the limitations period should be equitably tolled is unpersuasive. "To clothe himself in the protective garb of the tolling doctrine, a plaintiff must

---

[58] To the extent Belay intends to assert defendants are liable for Aegis' actions based on assignee liability, Belay must show the alleged TILA violation was plain on the face of the assigned disclosures. *See, e.g., Green v. Levis Motors, Inc.*, 179 F.3d 286, 294–95 (5th Cir. 1999) (construing 15 U.S.C. § 1641(a)).

[59] TILA also provides a right of rescission which expires 3 years after consummation of the transaction. *See* 15 U.S.C. § 1635(f); 12 C.F.R. § 226.23(a)(3). However, the right of rescission does not apply to "residential mortgage transactions." *See* 15 U.S.C. § 1635(e)(1); 12 C.F.R. § 226.23(f)(1); *see also Schieroni v. Deutsche Bank Nat. Trust Co.*, No. H-10-663, 2011 WL 3652194, at *3 (S.D. Tex. Aug. 18, 2011) (citing *Perkins v. Cent. Mortg. Co*, 422 F. Supp. 2d 487, 489 (E.D. Pa. 2006) (explaining that the right of rescission does not apply to residential mortgage transactions)). Even if Belay had the right to rescission, it expired on January 27, 2008.

[60] *See* compl. ¶ 121.

[61] *See* compl. ¶ 15.

---

show that the defendants concealed the reprobated conduct and despite the exercise of due diligence, he was unable to discover that conduct." *Moor*, 784 F.3d at 633.  Belay fails to allege any facts suggesting defendants, purposefully concealed anything from her.[62]  Belay also fails to allege any facts tending to demonstrate she has acted with diligence to discover the alleged violations.[63]   Other than to merely assert, in conclusory fashion, "Any and all statue[s] of limitations relating to disclosures and notices required pursuant to 15 U.S.C. § 1601, *et. seq*. were tolled due to Defendants failure to effectively provide the required disclosures and notices[,]"[64]  Belay does not explain why this is true, and the limitations period cannot be tolled.

## I.   Belay's RESPA Claim is Insufficiently Plead and Time-Barred.

Belay's attempt to hold defendants liable for unspecified violations of RESPA must be dismissed for two reasons.  First, Belay fails to plead a plausible RESPA claim because she fails to articulate non-conclusory facts to support the claim.  *See Iqbal*, 129 S. Ct. at 1949.  Second, the claim is time-barred.  12 U.S.C. § 2614.

### 1.   Belay's RESPA Claim is Based Entirely on Vague and Conclusory Assertions and is not Plausible.

As with her TILA claim, Belay makes bald assertions supporting her RESPA claim.  Belay claims, "No separate fee agreement, regarding the use of Market Street Cost of Savings as the Index for the basis of this loan, Disclosures of Additional income due to interest rate increases or the proper form and procedure in relation to the Borrowers Rights to Cancel were provided."[65]  She also claims defendants violated RESPA because "the payments between the Defendants were misleading and designed to create a windfall."[66]  As discussed above, Belay

---

[62] *See generally* compl.
[63] *See generally* compl.
[64] Compl. ¶ 122.
[65] Compl. ¶ 131.
[66] Compl. ¶ 132.

admits Aegis originated the loan[67] and makes no allegation defendants originated the loan or were involved in the loan origination.[68] Her vague, conclusory assertions offer little more than an "unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S. Ct. at 1949–50.

### 2. Belay's RESPA Claim is Barred by the Statute of Limitations.

Similar to her TILA claim, Belay attempts to hold defendants liable for unspecified violations of RESPA allegedly committed by Aegis. RESPA imposes either a one-year or a three-year statute of limitations depending on the violation alleged. 12 U.S.C. § 2614. Belay fails to specify in her complaint which portion of RESPA she contends defendants violated. This failure is of no consequence because this claim would be barred under either limitations period as the loan originated in 2005.

### J. Belay Is Not Entitled To Rescission.

Belay sues to rescind the loan.[69] To the extent this request for relief is based upon TILA, this claim is addressed above. To the extent it is based upon some other common law right, it fails because Belay fails to plead facts showing she offered to return any of the consideration she received—*i.e.*, the loan she received—to return the parties to their earlier positions as if no loan had been made. *See Humphrey v. Camelot Ret. Cmty.*, 893 S.W.2d 55, 59 (Tex. App.—Corpus Christi 1994, no writ); *Turner v. Houston Agric. Credit Corp.*, 601 S.W.2d 61, 65 (Tex. App.—Houston [1stDist.] 1980, writ ref'd n.r.e.). Because Belay does not allege she made any such offer to defendants, she cannot be entitled to rescind the loan as a matter of law.

---

[67] *See* compl. ¶ 15.
[68] *See generally* compl.; *see also* compl. p. 2. To the extent Belay intends to hold defendants liable for Aegis' actions based on assignee-liability, neither RESPA nor its implementing regulations contain an assignee-liability provision. *See* 12 U.S.C. §§ 2601–2617; 12 C.F.R. §§ 3500.1–3500.23; *accord In re Murray*, 239 B.R. 728, 736 (Bankr. E.D. Pa. 1999). RESPA makes liable only those who actually violate its (actionable) provisions. *See, e.g.*, 12 U.S.C. § 2605 ("Whoever fails to comply with any provision of this section shall be liable to the borrower for each such failure[.]"); *id.* § 2607 (extending joint and several liability only to those "persons who violate the prohibitions or limitations of this section"); *id.* § 2608(b) (limiting liability to the seller).
[69] *See* compl. ¶¶ 134-138.

## V.  PRAYER

This lawsuit is nothing more than a regurgitation of meritless claims found on the Internet rather than anything approaching a lawsuit founded on minimally sufficient allegations.  Belay's claims lack merit and are appropriate for dismissal with prejudice.

Dated: July 25, 2017                                         Respectfully submitted,

                                                  _____/s/ Andrew D. Thomas_____
                                                  Andrew D. Thomas, SBN: 24060714
                                                  C. Charles Townsend, SBN: 24028053
                                                  AKERMAN LLP
                                                  2001 Ross Avenue, Suite 3600
                                                  Dallas, Texas 75201
                                                  Telephone: 214.720.4300
                                                  Facsimile: 214.981.9339
                                                  andrew.thomas@akerman.com
                                                  charles.townsend@akerman.com

                                                  Monica Summers, SBN: 24083594
                                                  AKERMAN LLP
                                                  112 E. Pecan Street, Suite 2750
                                                  San Antonio, Texas 78205
                                                  Telephone: 210.582.0220
                                                  Facsimile: 210.582.0231
                                                  monica.summers@akerman.com

                                                  **ATTORNEYS FOR DEFENDANTS
                                                  NATIONSTAR MORTGAGE LLC,
                                                  VERIPRISE PROCESSING SOLUTION,
                                                  LLC, AURORA LOAN SERVICES,
                                                  LLC, AND MORTGAGE
                                                  ELECTRONIC REGISTRATION
                                                  SYSTEMS, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that on July 25, 2017, a true and correct copy of the foregoing was served as follows:

**Via Regular U.S. Mail**
**and Certified Mail / RRR**
**No. 7014 2120 0001 4390 5964**
Nesanet Belay
15352 English River Loop
Leander, Texas 78641

**Via Regular U.S. Mail**
**and Certified Mail / RRR**
**No. 7014 2120 0001 4390 5957**
Nesanet G. Belay
P.O. Box 301955
Austin, Texas 78705

*Pro Se*

_____/s/ Monica Summers_____
Monica Summers